IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AIX Specialty Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:19-cv-02385 |
| | ) | |
| v. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Raincoat Roofing Systems, Inc.; Chano's Roofing Corporation; Rocio Valdespino Gonzalez, as Independent Administrator of the Estate of Rafael Valdespino Zunigo, Deceased; and National Fire Insurance Company of Hartford, Intervenor-Defendant, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Rafael Valdespino Zuniga was fatally electrocuted while working for his employer, Chano's Roofing Corporation, which was a subcontractor on a construction project for Raincoat Roofing Systems. This dispute is about whose insurance is responsible for providing Raincoat's defense in the underlying lawsuit brought by Zuniga's estate against Raincoat. AIX Specialty, which insures Chano's, seeks a declaratory judgment that it does not have a duty to defend Raincoat as an additional insured under the policy issued to Chano's because the complaint in the underlying lawsuit does not allege that Chano's was negligent in any way. National Fire Insurance Company (National Fire), Raincoat's insurer, argues that AIX has a duty to defend pursuant to the terms of the Master Subcontracting Agreement between Raincoat and Chano's and AIX's policy issued to Chano's. Both AIX and National Fire have moved for summary judgment. For the reasons set forth below, the Court finds that AIX has no duty to defend Raincoat in the underlying lawsuit.

## BACKGROUND

*The underlying lawsuit*

On December 27, 2018, Rosie Valdespino filed a first amended complaint in the Circuit Court of Cook County in a suit captioned *Rosie Valdespino, as Independent Administrator of the Estate of Rafael Valdespino Zuniga, deceased, v. Raincoat Roofing Systems, Inc., Acacia National Management Corporation, and Nielsen Steel & Wire, L.P*, Case No. 2018 L 011093. Defendant's Statement of Material Facts (DSMF) ¶ 6; *Valdespino* Compl., Ex. A to Pl.'s Statement of Material Facts (PSMF), ECF No. 58-1. The *Valdespino* complaint alleges that Raincoat subcontracted some of the roofing work it was performing at a project in Franklin Park, Illinois, to Chano's. *Valdespino* Compl. at ¶¶ 6-7. On September 14, 2017, Chano's employee Rafael Valdespino Zuniga was using a hoist to lift gutters onto the roof when one of the gutters "came into contact with an energized, 34,000 volt overhead line located in close proximity to the roof upon which he was working[,]" fatally electrocuting him. *Id.* at ¶ 10.

The *Valdespino* complaint alleges that Raincoat "erected and placed" the hoist on the roof and that Raincoat was negligent in that it:

> a. erected a hoist on a roof in close proximity to energized overhead power lines;
>
> b. directed Plaintiff's decedent to use a hoist to lift metal objects in close proximity to energized overhead power lines;
>
> c. failed to contact the power company to request that overhead power lines in close proximity to roofers be de-energized;
>
> d. failed to contact the power company to request that overhead power lines in close proximity to roofers be properly covered;
>
> e. failed to warn roofers on its job site of the presence of energized overhead power lines;

2

    f. allowed roofers on its job site to work within dangerous proximity to energized overhead power lines;

    g. was otherwise careless and/or negligent.

*Id.* at ¶¶ 6-7. The complaint does not allege any negligence on the part of Chano's, and only mentions Chano's insofar as it alleges that Chano's was Zuniga's employer and Raincoat's subcontractor. *Id.* at ¶¶ 8-9.

National Fire filed a third-party complaint against Chano's in the underlying lawsuit on February 1, 2019. Ex B. to Plaintiff's Statement of Material Facts (PSMF), ECF No. 58-2. This third-party complaint alleges, in a conclusory manner, that Chano's was negligent in supervising its employees, but includes no specific allegations about what Chano's negligently did or failed to do with respect to the conditions that caused Mr. Zuniga's death.

*The Master Subcontractor Agreement*

Raincoat and Chano's entered into a Master Subcontracting Agreement (MSA) in June 2016, which, among other things, provides that Raincoat would be considered an "additional insured" on Chano's's policy for the project on which it was subcontracted. The relevant portions are reproduced here:

> 7. **Insurance.**
> ***
> (c) Subcontractor [Chano's] shall carry general liability insurance written on an occurrence basis including contractual liability, broad form property damage, completed operations, product liability and professional liability coverage where applicable and such other insurance as the Contractor [Raincoat] or Owner may require with no limitation for explosion, collapse and underground hazards. The minimum amount of such insurance shall be $1,000,000 for bodily injury and property damage per occurrence.
>
> (f) Contractor shall be considered and named as an additional insured on Subcontractor's liability insurance policies on all construction projects when Subcontractor has contracted with Contractor.

PSMF at ¶¶ 11-12. In addition to delineating insurance requirements, the MSA allocated to Chano's certain responsibilities for safety and materials at the work site:

> 3. **Work to [*sic*] Performed by Subcontractor.**
> For each construction project, Subcontractor shall at its own expense perform, furnish, and provide all labor, materials, equipment, tools, scaffolding, hoisting, and fall protection, and other facilities, things and services necessary or proper for or incidental to the performance and completion of the work to be performed by Subcontractor [.]
>
> * * *
>
> 8. **Compliance with Law.**
> (a) Subcontractor shall give all notices and comply with all laws, ordinances, rules, regulations and orders of any public authority bearing on the performance of Subcontractor's Work. Subcontractor shall at all times perform all Work in accordance with the current regulations of the Occupational Health and Safety Administration (OSHA)[.]
>
> * * *
>
> (c) Subcontractor shall take all necessary safety precautions with respect to his Work, shall comply with all safety measures initiated by others on the job and shall comply with all applicable laws, ordinances, rules, regulations and orders of any public authority for the safety of persons and property. Subcontractor shall fully cooperate with Contractor in the observance of federal, state and private safety programs applicable to his Work. The Subcontractor shall report immediately to the Contractor any injury to any of the Subcontractor's employees at the site.

DSMF ¶¶ 13.

### *The AIX Policy*

The AIX policy issued to Chano's sets forth the circumstances under which another entity becomes an "additional insured:"

> A. **Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
>   1. Your acts or omissions; or
>
>   2. The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured.

4

> However, the insurance afforded to such additional insured:
>
> 1. Only applies to the extent permitted by law; and
>
> 2. Will not be broader than that which you are required by the contract or agreement to provide for such additional insured. A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

PSMF ¶ 14.

To sum up: the *Valdespino* complaint alleges that Raincoat was directly negligent in its actions relating to the hoist and the safety of the construction site and alleges no direct or indirect negligence on the part of Chano's, though it alleges an employer/employee relationship between Zuniga and Chano's, and a contractor/subcontractor relationship between Raincoat and Chano's. The MSA provides that Raincoat shall be considered an additional insured under Chano's policy for the duration of the project. It also says that Chano's is responsible for providing "all labor, materials, equipment, tools, scaffolding, hoisting, and fall protection," and that it must comply with safety laws and regulations. The AIX policy provides bodily injury coverage for additional insureds where Chano's has designated another party as an additional insured by contract, but only if the bodily injury occurred "in whole or in part" due to Chano's acts or omissions.

## **DISCUSSION**

To determine whether an insurer has a duty to defend an insured, courts compare the complaint in the underlying lawsuit to the policy language. *General Agents Ins. Co. of America, Inc. v. Midwest Sporting Goods Go.*, 828 N.E.2d 1092, 1098 (Ill. 2005). "If the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured even if the allegations or groundless, false or fraudulent." *Id.* Underlying complaints are construed liberally in favor of the insured. *Id.* Because worker's compensation statutes immunize employers from tort claims brought by injured employees, and, as a result,

5

employees seldom allege negligence against their employers in these actions, an underlying complaint need not feature "explicit allegations of negligence by the named insured" in order to trigger additional insured coverage. *Pekin Ins. Co. v. Centex Homes*, 2017 IL App (1st) 153601 ¶ 39. Rather, Illinois courts examine underlying complaints and ask whether they "contain[] facts to support a theory of recovery for the underlying plaintiff based on the negligence of the named insured." *Id.* If "it is clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage," there is no duty to defend. *Illinois Tool Works Inc. v. Travelers Cas. & Sur. Co.*, 2015 IL App (1st) 132350, ¶ 27.[1]

A court may look beyond the underlying complaint to extrinsic documents such as third-party complaints, so long as the third-party complaints are not self-serving or filed by the putative additional insured seeking coverage. *Scottsdale Ins. Co. v. Columbia Ins. Group, Inc.*, 972 F.3d 915, 919 (7th Cir. 2020) (gathering cases on extrinsic evidence in additional insured disputes). Contracts, like the policy and the MSA, are to be interpreted to "give effect to the parties' intent, which is to be discerned from the contractual language." *Pekin Ins. Co. v. Pulte Home Corp.*, 935 N.E.2d 1058, 1064 (Ill. App. 1st 2010).

AIX does not dispute that there is a written agreement between Raincoat and Chano's in which Chano's agreed to include Raincoat as an additional insured under Chano's policy, nor does it dispute that Mr. Zuniga died "in the performance of Chano's ongoing operations for Raincoat." AIX's Resp. 3, ECF No. 57. Rather, it argues that the allegations of the complaint do not bring the underlying lawsuit within the scope of the policy, because the policy only covers Raincoat as an

---

[1] Some Illinois courts, including the appellate court in *Illinois Tool Works*, also state the standard as requiring that the underlying complaint "preclude any possibility of coverage." *Id*. The Court sees no inconsistency there, as a complaint that "fails to state facts which bring the case within, or potentially within, the policy's coverage" necessarily "preclude[s] any possibility of coverage."

6

additional insured for bodily injuries caused "in whole or in part" by acts or omissions of Chano's, and the complaint alleges negligence only by Raincoat. *Id.*

National Fire responds that the complaint's silence as to any negligence by Chano's is not dispositive. Observing that Illinois' worker's compensation statute immunizes employers from injured employees' tort lawsuits, National Fire argues that the *Valdespino* complaint must be read within that context. National Fire MSJ at 4, ECF No. 54; *see Centex*, 2917 IL App (1st) 153601 ¶ 36 (acknowledging that, because of this worker's compensation exclusivity context, "the direct employer, who is generally the named insured, is not typically a named defendant in the underlying case."). According to National Fire, even though the *Valdespino* complaint does not mention Chano's (other than stating that it was the decedent's employer), there remains the potential—and that is all that is required—that Raincoat could be held vicariously liable in the *Valdespino* suit for acts or omissions by Chano's. National Fire MSJ at 4. National Fire notes, moreover, that the underlying complaint alleges that Mr. Zuniga died because of an accident involving hoisting; the MSA provides that Chano's will "perform, furnish, and provide all labor, materials, equipment, tools, scaffolding, hoisting, and fall protection." And finally, the third-party complaint filed by Raincoat—the party seeking coverage—creates the potential that Raincoat could win contribution from Chano's for the latter's acts or omissions.

The Court first compares the *Valdespino* complaint to the policy and concludes that the complaint—which alleges no facts whatsoever as to Chano's conduct—does not trigger AIX's duty to defend. Next, the Court considers whether the MSA tips the scales in National Fire's favor and concludes that it does not. Finally, the Court concludes that National Fire's third-party complaint in the underlying lawsuit does not change the analysis: the third-party complaint is self-serving, filed by the party seeking coverage, a notion that is reinforced by the fact the allegations

7

therein are entirely conclusory. Accordingly, with respect to whether AIX has a duty to defend Rainbow in the underlying case, National Fire is not entitled to summary judgment, but AIX is.[2]

## I. The Policy and the Underlying Complaint

The policy provides that AIX will defend an additional insured in an action related to "bodily injury" caused "in whole or in part" by the insured's "own acts or omissions." Thus, AIX has a duty to defend Raincoat in the underlying lawsuit if the allegations of the *Valdespino* complaint create the potential that Raincoat could be found derivatively liable based on any negligent actions committed by Chano's.

National Fire argues that the complaint demonstrates a potential that Raincoat could be found vicariously liable for Chano's acts or omissions, pointing to the sole allegations in the complaint that mention Chano's—that it was the decedent's employer, and that the decedent was performing the work for which Chano's had been subcontracted. National Fire MSJ at 5 (citing *Valdespino* Compl. ¶¶ 8, 10). In National Fire's view, all it takes to trigger AIX's duty to defend is that Chano's worker was on the job site pursuant to this subcontract: "The mere fact that an employee of Chano's Roofing was present and performing the subcontracted work at the location... demonstrates that Raincoat Roofing could face liability for any acts or omissions of Chano's Roofing." National Fire MSJ at 5. The underlying complaint's silence as to any acts by Chano's is no problem—in similar cases, National Fire argues, courts have overlooked such silence, citing

---

[2] This opinion resolves only the duty to defend issue. To the extent that AIX seeks summary judgment that its policy does not provide coverage based on the indemnification provision in the MSA or the claims asserted in Rainbow's third-party complaint in the underlying suit, it is not clear to the Court that those claims are ripe. National Fire suggests as much in its response brief, saying that "AIX's remaining arguments about coverage for Chano's Roofing with respect to the indemnification provision within the MSA and as to the *Valdespino* third-party complaint are premature[.]" And the Seventh Circuit "regularly say[s] that decisions about indemnity should be postponed until the underlying liability has been established[.]" *See Lear Corp v. Johnson Electric Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) (collecting cases). This issue will be addressed at the status hearing set by the docket entry accompanying the issuance of this opinion.

8

worker's compensation exclusivity, and found a duty to defend. National Fire MSJ at 4. National Fire's argument features the Illinois Appellate Court's opinion in *Pekin Ins. Co. v. Centex Homes*, 2017 IL App (1st) 2017, where the court stated that "'silen[ce] as to any acts or omissions' by the named insured must be understood as the possible result of tort immunity for employers under the workers' compensation laws and ***should not be a basis for refusing to defend*** an additional insured." *Id.* at ¶ 38 (emphasis added), *quoting Ramara v. Westfield Ins. Co.*, 814 F.3d 660, 677-78 (3d Cir. 2017).

AIX acknowledges that worker's compensation exclusivity is often at play in cases like this one but argues that such exclusivity does not mean that a complaint completely devoid of facts going to the named insured's negligence triggers a duty to defend. AIX points out that there is not a single allegation that any act or omission by Chano's contributed "in whole or in part" to Mr. Zuniga's death. Instead, the underlying complaint alleges only direct negligence by Raincoat—it erected the hoist too close to power lines, failed to contact the power company to do something about the power lines, and failed to warn roofers of the hazard. National Fire's Resp. at 3, ECF No. 61.

Although courts must construe insurance policies and complaints liberally in favor of imposing a duty to defend, National Fire's contention that a duty to defend exists based solely on the fact that Chano's was a subcontractor that performed some of the roofing work stretches the doctrine beyond its boundaries. Notwithstanding the need to consider the implications of worker's compensation exclusivity on the allegations of the underlying complaint, Illinois law requires the pleading of some alleged act or omission by Chano's suggesting that it is liable for the injuries claimed in the underlying suit. *Centex*—on which National Fire mistakenly relies—makes this point expressly in defining "the test" that Illinois courts apply in determining whether a duty to defend exists: "Instead of requiring explicit allegations of negligence by the named insured, we

9

found it sufficient that the underlying complaint contained facts to support a theory of recovery for the underlying plaintiff based on the negligence of the named insured." 2017 IL App (1st) 153601 ¶ 39 (citing *Pekin Ins. Co. v. CSR Roofing Contractors, Inc.*, 2015 IL App(1st) 142473 ¶¶ 50, 54 (2015).[3] While clearly a court should not be surprised that an employer is not named as a defendant, nor that a complaint does not expressly allege negligence against a named insured employer who benefits from workers' compensation immunity, something that suggests, directly or indirectly, negligent conduct (or omission) on the part of the employer must be alleged.

Thus, in *Centex*, the appellate court found a duty to defend not because there were express allegations that the employer was negligent, but because of facts alleged in the underlying complaint that created the potential the additional insured could be found liable due to the named insured's negligence—namely, that the employer had built the wall that collapsed and injured the plaintiff. 2017 IL App (1st) 153601 ¶ 43. Additionally, the underlying complaint in *Centex* (unlike the *Valsdespino* complaint) alleged that the additional insured had negligently supervised its subcontractor, necessarily implying that the subcontractor had been negligent. *Id. See also, e.g., Pekin Ins. Co. v. CSR Roofing Contractors, Inc.*, 2015 IL App (1st) 142473 ¶ 50 (finding duty to defend where complaint alleged that general contractor allowed subcontractor employees "to not be competent" because "at the core" that allegation is premised on subcontractor's acts and omissions); *United Fire and Cas. Co. v. Prate Roofing and Installations, LLC*, 7 F.4th 573, 582 (7th Cir. 2021) (holding that insurer had a duty to defend where the coverage was based solely on

---

[3] The Third Circuit's opinion in *Ramara,* which National Fire also invokes, similarly recognized that coverage would correctly be denied in cases "in which the plaintiff pleads his underlying complaint so as to avoid attributing his injury to his employer's acts or omissions" and it explained that workers' compensation exclusivity should be "factored into" the analysis, primarily through liberal construction of the underlying complaint. *Ramara*, 814 F.3d at 679.

10

vicarious liability and the underlying complaint expressly alleged that the additional insured had committed several of the 19 acts or omissions alleged in the complaint "through its agents").

The flip side of the coin is that where the underlying complaint lacks allegations to support a theory of recovery based on negligence by the named insured, Illinois courts hold that there is no duty to defend. Thus, in *Pekin Ins. Co. v. Illinois Cement Co., LLC*, the underlying complaint alleged that the additional insured erected the set of stairs that caused the plaintiff's injuries and was devoid of allegations that the named insured was negligent; accordingly, the court held that the complaint did not trigger a duty to defend. 2016 IL App (3d) 140469, ¶¶ 11. Similarly, and in a case also involving a similar factual context, the Illinois Appellate Court found that Pekin had no duty to defend in *Pekin Ins. Co. v. United Contractors Midwest, Inc.*, 2013 IL App (3d) 120803 ¶ 6. There, an employee of a landscaping company that had been subcontracted to remove trees and logs was electrocuted on the job site after contacting energized electrical lines. The employee's complaint in the underlying lawsuit, like the one here, "did not contain any allegations that [the subcontractor] was negligent in any manner." *Id.* at ¶ 6. Rather, the underlying complaint focused entirely on the additional insured's arrangement of the work site close to power lines, and its failure to supervise and to warn employees working in proximity to those power lines. *Id.* at 240 (the additional insured, "acting alone, negligently violated [its] duty of care to Hill by failing to supervise and warn Hill of the dangers posed by the live, overhead power lines on or near the work site"). The policy in that matter provided coverage for the additional insured "only with respect to vicarious liability for 'bodily injury'… imputed from You to the Additional Insured[.]" *Id.* at 239. Considering the absence of any allegation of negligence by the named insured, the court reversed the trial court's grant of summary judgment for the additional insured. *Id.* at 240. As the *Centex* court observed, this result is consistent with the requirement that a duty to defend requires "allegations suggesting potential negligence by the named insured and facts to support a theory of

11

recovery based on negligence by the named insured." *Centex*, 2017 IL App (1st) 153601 ¶ 40 (cleaned up).

The lesson of these cases is that it doesn't take much for an underlying complaint to trigger a policy's additional insured coverage, but there must be some fact alleged, if only indirectly, that potentially brings the underlying lawsuit within the scope of the policy. National Fire's problem is that it can point to no such allegation. The *Valdespino* complaint does not allege any negligent act by Chano's, nor any facts that suggest the potential for Raincoat to be found liable based "in whole or in part" on Chano's's negligence.

Absent such allegations, the *Valdespino* complaint does not implicate the coverage provided to Chano's by the AIX policy.[4] Chano's and its insurer, AIX, did not agree that the policy would extend to cover an additional insured for any bodily injury occurring while Chano's was

---

[4] National Fire cites *Pulte*, 935 N.E.2d. at 1065-66, to support its argument that an injury incurred while working in the scope of employment triggers a duty to defend. The *Pulte* court quotes from another appellate case, *Am. Country Ins. Co. v. James McHugh Const. Co.*, 801 N.E.2d 1031, 1040 (Ill. App. 1st Dist. 2003): "this court has frequently found that the additional insured is covered because it is apparent that the worker's injury arose out of the named insured's operations, and 'but for' the plaintiff's presence on the site in the service of the named insured, the accident would not have happened." While the *Pulte* court presented this quotation as a statement of law, it was actually the *McHugh* court's restatement of an additional insured's argument, which that court ultimately rejected because the underlying complaint in that matter "allege[d] only direct negligence against McHugh." *McHugh*, 801 N.E.2d at 971. The policy in that case, like the policy at issue here, required "that the underlying complaint at least leave[] open the possibility that the injuries at issue could have arisen out the acts or omissions of [the named insured.]" The court in *Pulte*, while it mistakenly characterized this portion of *McHugh* as a rule of law, ultimately analyzed the facts in a manner consistent with *McHugh* and the cases discussed herein—because the underlying complaint there, unlike here, alleged causes of action against both the named and additional insureds (thus making express allegations of negligence against the named insured, not just alleging facts that indirectly pointed to its negligence) the possibility existed that the additional insured could be found liable solely based on the actions of the named insured (as the policy at issue required). *Pulte*, 935 N.E.2d at 1063-64. In short, neither *Pulte* nor *McHugh* supports National Fire's argument that AIX has a duty to defend because Mr. Zuniga would not have died "but for" his employment with Chano's. In each case, the court compared the allegations of the underlying complaint to the policy language and found some fact—other than the fact of employment and the subcontract—that brought the complaint within the scope of the policy.

12

performing work under the MSA; instead they agreed that coverage would extend only for those injuries "caused, in whole or in part, by [Chano's] acts or omissions[.]" And there are simply no allegations in the underlying complaint that suggest that Chano's caused any injury merely by showing up and performing the work it contracted to perform. It is conceivable, to be sure, that an additional insured could be covered for any injury that arises "from the mere fact that an employee… was present and performing the subcontracted work[,]" and indeed, there are cases in which the parties have so agreed. *See, e.g., Hartford Fire Ins. Co.*, 645 N.E.2d at 150 (holding for the additional insured where "[t]he endorsements do not limit coverage to injuries attributable to [the named insured's] negligence"); *see also Selective Ins. Co. of South Carolina v. Lower Providence Tp.*, 2013 WL 3213348 *10 (E.D. Pa. 2013) (holding that duty to defend was triggered where employee was injured while working on the job site within the scope of his employment because the policy provided for coverage for bodily injuries "caused, in whole or in part, by [the named insured's] 'ongoing operations.'"). The policy AIX issued to Chano's, however, was more limited in scope.[5]

Relying entirely on the context of worker's compensation exclusivity to explain the complaint's silence as to Chano's, National Fire asserts that "[i]f the Estate could sue Chano's Roofing, surely there would be direct allegations of liability." National Fire's Reply at 3, ECF No. 62. But by the same token, if Mr. Zuniga's estate thought that Raincoat was vicariously liable for negligence by Chano's, surely it would have alleged that Raincoat was vicariously liable.[6] One

---

[5] While Chano's may have had a contractual obligation to obtain a policy that covered any injuries that occurred without regard to whether any act or omission of Chano's caused them, that contractual duty would not expand the scope of coverage that AIX was obligated to provide by virtue of the policy Chano's procured. *See CSR Roofing*, 2015 IL App 142473 ¶ 27 (declining to modify policy coverage provided for additional insured general contractor on basis of named insured's contractual duty to procure broader coverage).

[6] Workers' compensation exclusivity doubtless explains why employers are not typically named as defendants in the complaints underlying duty to defend claims by additional insureds,

would expect a plaintiff to plead any and all theories available for recovery, whether the defendant's negligence was direct or vicarious. Mr. Zuniga's estate plead only the direct negligence of Raincoat. The complaint includes no allegations that suggest that any acts or omissions by Chano's caused, in whole or part, Mr. Zuniga's death.

Accordingly, the complaint does not give rise to a duty of AIX to defend Raincoat as an additional insured under the policy it provided to Chano's. While Illinois courts stress that policies should be construed liberally in favor of the additional insured and that any doubts as to coverage should be resolved in its favor, a liberal construction rule does not permit courts to rewrite the policy language, as National Fire would have it, to extend coverage whenever a subcontractor's employee is injured in the scope of his employment performing work pursuant to a subcontract. Where Illinois courts have reached that result, they were interpreting policies that supported such expansive liability. *See Harford Fire Ins. Co.*, 645 N.E.2d at 150. That liability did not result from reading facts into the underlying complaint that the plaintiff did not allege.

The *Valdespino* complaint does not trigger additional insured coverage. The Court next considers whether the MSA and the third-party complaint are sufficient to compensate for what the complaint lacks.

II.     **The MSA**

National Fire contends that the MSA bolsters its case for coverage. In the MSA, the parties agreed that Chano's would provide "scaffolding, hoisting and fall protection, and other facilities, things and services necessary or proper" and that it would "take all necessary safety precautions with respect to [its] Work, … comply with all safety measures initiated by others on the job," and "comply with all applicable laws, ordinances, rules, regulations and orders of any public authority

---

but the exclusivity provision in no way restricts them from alleging a theory of vicarious liability against a third party premised on an employer's acts or omissions.

14

for the safety of persons or property." MSA at § 8(c). Because the underlying complaint includes allegations related to hoisting and safety, National Fire argues, the MSA raises the possibility that Raincoat could be held liable for Chano's's acts or omissions.

National Fire relies on *CSR Roofing* as an example of a court looking to a subcontractor's obligations in an MSA with respect to safety to find the potential for liability. 2015 IL App (1st) 142473. In *CSR Roofing*, a subcontractor's employee was injured when he fell off a roof, and the contractor tendered its defense to the subcontractor's insurer. *Id.* at ¶¶ 10. 14. Because the MSA in that case provided that the subcontractor was responsible for complying with safety regulations, National Fire says, the Court held that there was the potential for the additional insured to be held vicariously liable for the named insured's failure to follow safety regulations. National Fire MSJ at 5-6. But the court in *CSR Roofing* did not ground its decision on the MSA—in the same paragraph cited by National Fire for the proposition that its MSA is dispositive, the court identified the actual foundation for its reasoning: "Seeing as the amended complaint alleges a lack of adequate safety equipment in violation of OSHA, we find it at least *possible* that CSR could be found vicariously liable for [the named insured's] failure to ensure compliance with OSHA regulations." *Id.* at ¶ 51 (emphasis in original). The MSA in that matter was merely used to "confirm" the potential, based on facts alleged in the underlying complaint, that the additional insured could be found vicariously liable for the named insured's negligence. *Id.* The underlying complaint alleged, among other things, that the additional insured "[f]ailed to require its subcontractor to be competent as identified and defined by OSHA" and "failed to require the subcontractor to comply with OSHA regulations. *Id.* at ¶ 12. As discussed above, there are no similar allegations suggesting negligence by Chano's in the *Valdespino* complaint, which alleges only that Raincoat was negligent.

Even if the court were to look to the MSA to find a potential for liability based on acts or omissions by Chano's where the underlying complaint suggests none, the language of the MSA does not support National Fire's position. National Fire seizes on the MSA because it makes Chano's responsible for providing hoisting, and the underlying complaint alleges a hazardous condition related to hoisting. National Fire MSJ 6-7. This simplistic equation does not hold up to scrutiny. As AIX points out, the *Valdespino* complaint does not allege that the hoist supplied by Chano's was defective or that Chano's performed its role in operating the hoist negligently. It alleges that Raincoat erected the hoist too close to high voltage power lines, that Raincoat was responsible for that hazardous condition, and it failed to warn Mr. Zuniga and other Chano's employees about the danger. *Valdespino* Compl. ¶¶ 11, 13. The MSA therefore, does not help National Fire.

### III. The Third-Party Complaint

Finally, National Fire argues that its third-party complaint in the *Valdespino* litigation creates the potential that Raincoat could be found vicariously liable for acts or omissions of Chano's. National Fire MSJ at 7-8. AIX argues that the Court should not consider National Fire's third-party complaint because it represents little more than a self-serving attempt to obtain coverage. The Court agrees.

There is not an absolute rule against consideration of any third-party complaints in determining whether an insurer owes a duty to defend. *See Scottsdale*, 972 F.3d at 921 ("We can consider these third-party complaints"). But they may not be considered where, as here, they are filed by the additional insured seeking coverage. *Id.* at 919. Illinois courts have repeatedly held that third-party complaints like National Fire's merit little weight because they were filed in order to make an argument for coverage. *See, e.g., United Contractors Midwest*, 2013 IL App (3d) 120803 ¶ 32 ("we will not consider Cullinan's potentially self-serving, third-party complaint for

16

purposes of summary judgment"); *American Economy Ins. Co. v. DePaul University*, 383 Ill. App. 3d 172, 180 (1st Dist. 2008) (refusing to consider third-party complaint where "DePaul was the party that prepared and filed the third-party complaint and used its complaint to seek coverage from American Economy as an additional insured").

In any event, this third-party complaint adds nothing to National Fire's duty to defend argument. It alleges that Chano's was negligent, but it is light on specifics and heavy on conclusions. According to Raincoat's complaint, Chano's was negligent because it:

   a. Failed to properly supervise the activities of its employees, including Decedent;

   b. Failed to properly inspect the area where Decedent performed his work;

   c. Failed, before the accident, to stop the work of Decedent for safety considerations;

   d. Failed to properly train Decedent to safely perform his work;

   e. Failed to warn Decedent of the dangers of performing his work; and

   f. Was otherwise careless or negligent.

These sorts of boilerplate allegations, devoid of any facts alleged about how Chano's failed to supervise, inspect, train, or warn, bolster the inference that National Fire's third party complaint was filed to seek additional insured coverage. It stands in stark contrast to the *Valdespino* complaint and its specific allegations: Raincoat was negligent because it erected the hoist too close to power lines, failed to call the power company to address the dangerous condition, failed to warn those working on the roof about the hazard, and allowed them to continue bringing metal objects up to the roof despite the hazard.

The third-party complaint that the Seventh Circuit considered fair game in *Scottsdale* contained more particular allegations than Raincoat's third-party complaint here, and, more importantly, it was consistent with the allegations of the injured worker's complaint in the underlying lawsuit. That matter arose out of a worker's injury sustained from falling through an

unguarded opening on a construction site. 972 F.3d at 917. Among other things, the third-party complaints (which were not filed by parties claiming to be additional insureds) alleged that the subcontractor had "allowed the opening to remain open and unprotected" and had "failed to provide adequate illumination." *Id.* at 921. But the Seventh Circuit clarified that it could conclude there was a duty to defend "even without considering [the third-party complaints]" because the "underlying suit suggests" that the subcontractor could be liable. *Id.* at 920. Indeed, the underlying complaint made specific allegations that pointed to negligent conduct by the subcontractor: the putative additional insureds allegedly "negligently failed to properly supervise the construction site and monitor work of [their] subcontractors" and "allowed [their] subcontractors to engage in the unsafe practice of not covering or guarding the unmarked opening in the floor[.]" *Id.* at 918.

\*   \*   \*

For these reasons, the Court concludes that AIX has no duty to defend Raincoat in the underlying suit. AIX's motion for summary judgment as to that issue is granted and National Fire's is denied.

Date: March 11, 2022

John J. Tharp, Jr.
United States District Judge